JAI M. GOHEL, CA SBN 170782
Attorney at Law
819 Eddy Street
San Francisco, California 94109
Telephone:   (415) 771-6174
Facsimile:     (415) 474-3748
Email: jaigohel@rocketmail.com

Attorney for Defendant
MONICO DOMINGUEZ

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

--oo0oo--

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　Plaintiff,<br>　　vs.<br><br>MONICO DOMIGUEZ, et. al.,<br><br>　　　　　Defendants. | Case No.: CR 12-00834  EMC<br><br>**DEFENDANT MONICO DOMINGUEZ'S TRIAL BRIEF**<br><br>Date:      January 28, 2014<br>Time:      2:30 p.m.<br>Court:     Hon. Judge Edward M. Chen |

　　　　Defendant MONICO DOMINGUEZ hereby submits the following Trial Brief pursuant to this Court's Pretrial Order.

////

**DEFENDANT MONICO DOMINGUEZ'S
TRIAL BRIEF**                               1-

(A) **Description of the offense charged in the case against Defendant Monico Dominguez and Summary of Government's Evidence To Be Offered Against Him.**

Defendant Monico Dominguez is charged in 11 counts of a 15-count Superseding Indictment.  Count One and Two allege a Commission of Hobbs Act Robbery and Conspiracy to Commit a Hobbs Act Robbery on August 11, 2011, in violation of 18 U.S.C. §1951.  Count Three alleges a violation of 18 U.S.C. § 924(c) Possession of a Firearm in Furtherance of a Crime of Violence as it relates to the August 11, 2011 robbery.  Counts Four through Six allege Money Laundering proceeds from the August 11, 2011 robbery.  Count Seven alleges Structuring of proceeds from the August 11, 2011 robbery.  Count Eight alleges Conspiracy to Commit a Hobbs Act Robbery from July to August 6, 2012 , in violation of 18 U.S.C. §1951.  Count Nine alleges an Attempt to Commit a Hobbs Act Robbery on August 6, 2012.  Count Ten alleges a violation of 18 U.S.C. § 924(c) Possession of a Firearm in Furtherance of a Crime of Violence as it relates to the August 6, 2012 attempted robbery.  Count 11 alleges Obstruction of Justice, in violation of 18 U.S.C. § 1512(c)(2), which stems from the alleged attempt by Mr. Dominguez to bribe a government witness to dissuade him from testifying.

       1. **Summary of Government Evidence to Be Offered Against Monico Dominguez**

The Garda armored truck company warehouse in Santa Rosa, California was robbed on August 11, 2011.  The perpetrators stole just over $909,000 in cash during the robbery.  They wore masks during the robbery, with one assailant carrying an AK-47 style assault weapon, and the other assailant carrying a handgun. The two Garda guards who were robbed were only able to identify features on the assailants such as skin color, eye color, hair length, voice accent, hair

**DEFENDANT MONICO DOMINGUEZ'S TRIAL BRIEF**                                       2-

length and body dimensions. The robberies were captured on surveillance cameras, but the case went unsolved by the Santa Rosa Police Department and FBI for almost one year.

At the end of July, 2012, the San Francisco FBI office received a call from an individual named Kevin Jensen, who inquired about the $100,000 reward offered by Garda for information related to the August 11, 2011 robbery. Mr. Jensen was a friend of defendant Monico Dominguez from his youth. Mr. Jensen had a long history of theft-related crimes for which he ultimately was incarcerated in state prison. Mr. Jensen met with Santa Rosa Police Detectives and FBI agents and claimed that he had recently been solicited to commit second robbery at the Garda warehouse in Santa Rosa by Monico Dominguez. He ultimately agreed to participate in a sting operation related to the planned second Garda robbery and make monitored phone calls and wear a body wire and surveillance equipment. As a result of this sting operation, defendant Monico Dominguez was charged in Sonoma County Superior Court. In those proceedings, the Superior Court did not hold Mr. Dominguez or the other co-defendants to answer for the kidnapping for purpose of robbery charges, which carried an indeterminate life term. Thereafter, Mr. Dominguez was indicted in federal court for the August 11, 2011 robbery as well as the second attempted robbery which was to have occurred on or about August 6, 2012.

The government's evidence of the August 11, 2011 robbery and charges stemming from the August 11, 2011 robbery will primarily consist of:

(1) the video surveillance videos of the Garda warehouse,

(2) the testimony of the two Garda driver/guards who were robbed and restrained;

(3) evidence seized from Monico Dominguez's home including clothing, weapons and ballistic gear;

**DEFENDANT MONICO DOMINGUEZ'S TRIAL BRIEF** 3-

(4) the testimony of cooperating witness Milton Gamez-Fierro who will testify that he committed the robbery with Monico Dominguez;

(5) certain cell phone and cell tower records;

(6) the testimony of cooperating "jailhouse snitch" Chance Trishel, who will testify regarding admissions made by Monico Dominguez while incarcerated at the Sonoma County Jail, including an offer to bribe cooperating witness Kevin Jensen;

(7) the testimony of Caitlin Butler who was Monico Dominguez's girlfriend, related to observations of Monico Dominguez on the evening of August 11, 2011;

(8) evidence of large, structured cash deposits into Monico Dominguez's bank accounts after August 11, 2011;

(9) evidence of large cash deposits into the bank accounts of Caitlin Butler after August 11, 2011; and

(10) evidence of cash or cash equivalent purchases of vehicles, motorcycles and equipment by Monico Dominguez after August 11, 2011.

The government's evidence regarding the conspiracy and attempted robbery of the Garda armored truck on or about August 6, 2012 will primarily consist of:

(1) the testimony of cooperating witness, Kevin Jensen, regarding the recruitment and planning of the Garda armored truck by Monico Dominguez in late July and early August, 2012;

(2) undercover monitored audio and video evidence of phone calls and meetings between Kevin Jensen and Monico Dominguez;

(3) cell phone records of Monico Dominguez, former co-defendant Juan Dominguez, Jr., former co-defendant and cooperating witness Shawn Geernaert and David Dominguez;

(4) monitored GPS records of vehicles purportedly conducting surveillance and "casing" of the Garda armored truck warehouse site, as well as movements on the day of the planned August 6, 2012 robbery; and evidence seized from Monico Dominguez's residence and workshop

### B. A Description of the Relevant Facts Upon Which the Parties Stipulate.

Defendant contemplates that while facts necessary to prove the elements of the charges against Mr. Dominguez will not be based upon stipulations, there will be stipulations for foundational facts, such as authenticity and chain of custody for much of the evidence to be presented at trial. The parties are meeting and conferring to reach stipulations upon these matters.

### C. Brief Description of the Law Applicable to Each Alleged Offense.

#### 1. Elements of Hobbs Act Robbery and Attempted Robbery (Counts Two and Nine)

Count Two:

*First*, the defendant induced Garda Cash Logistics to part with property by the wrongful use of actual or threatened force, violence, or fear;

*Second*, the defendant acted with the intent to obtain property;

*Third*, commerce from one state to another was affected in some way.

Count Nine:

*First*, the defendant intended to induce Garda Cash Logistics to part with property by the wrongful use of actual or threatened force, violence, or fear;

*Second*, the defendant acted with the intent to obtain property;

*Third*, commerce from one state to another would have been affected in some way; and

*Fourth*, the defendant did something that was a substantial step toward committing thecrime.

Only a *de minimis* effect on interstate commerce is required to establish jurisdictionunder the Hobbs Act, and the effect need only be probable or potential, not actual.

Mere preparation is not a substantial step toward committing the crime. To constitute a substantial step, a defendant's act or actions must demonstrate that the crime will take placeunless interrupted by independent circumstances.

2. **Elements of Conspiracy to Commit Hobbs Act Robbery (Count One and Eight)**

Count One:

*First*, beginning no later than in or about June 2011, and continuing through at least August 11, 2011, there was an agreement between two or more persons to commit robbery as charged in the indictment; and

*Second*, the defendant became a member of the conspiracy knowing of at least one of its objects and intending to help accomplish it.

Count Eight:

*First*, beginning no later than in or about July 2012, and continuing through at least August 6, 2012, there was an agreement between two or more persons to commit robbery as charged in the indictment; and

*Second*, the defendant became a member of the conspiracy knowing of at least one of its objects and intending to help accomplish it.

A conspiracy is a kind of criminal partnership—an agreement of two or more persons to commit one or more crimes. The crime of conspiracy is the agreement to do something unlawful; it does not matter whether the crime agreed upon was committed.

For a conspiracy to have existed, it is not necessary that the conspirators made a formal agreement or that they agreed on every detail of the conspiracy. It is not enough, however, that they simply met, discussed matters of common interest, acted in similar ways, or perhaps helped one another.

The government must prove that there was a plan to commit robbery. One becomes a member of a conspiracy by willfully participating in the unlawful plan with the intent to advance or further some object or purpose of the conspiracy, even though the person does not have full knowledge of all the details of the conspiracy. Furthermore, one who willfully joins an existing conspiracy is as responsible for it as the originators. On the other hand, one who has no knowledge of a conspiracy, but happens to act in a way which furthers some object or purpose of the conspiracy, does not thereby become a conspirator. Similarly, a person does not become a conspirator merely by associating with one or more persons who are conspirators, nor merely by knowing that a conspiracy exists.

### 3. Elements of Firearms–Carrying/Possession in Furtherance of a Crime of Violence (Count Three and Ten)

Count Three:

*First*, the defendant committed the crime of conspiring to commit robbery as charged in Count One of the indictment or the crime of committing robbery as charged in Count Two of the indictment, which I instruct you are crimes of violence;

*Second*, the defendant knowingly carried a firearm during and in relation to that crime or the defendant knowingly possessed a firearm in furtherance of that crime.

Count Ten:

*First*, the defendant committed the crime of conspiring to commit robbery as charged in Count Eight of the indictment or the crime of committing robbery as charged in Count Nine of the indictment, which I instruct you are crimes of violence;

*Second*, the defendant knowingly carried a firearm during and in relation to that crime or the defendant knowingly possessed a firearm in furtherance of that crime.

A person "carried" a firearm if he knowingly possessed it and held, moved, conveyed or transported it in some manner on his person. A person "possessed" a firearm if the person knew of its presence and had physical control of it, or knew of its presence and had the power and intention to control it. A person "used" a firearm if he actively employed the firearm during and in relation to a crime of violence.

A person carried a firearm "during and in relation to" the crime if the firearm facilitated or played a role in the crime.

### 4. Elements of Money Laundering (Counts Four, Five and Six)

*First*, the defendant knowingly engaged or attempted to engage in a monetary transaction;

*Second*, the defendant knew the transaction involved criminally derived property;

*Third*, the property had a value greater than $10,000;

*Fourth*, the property was, in fact, derived from the robbery charged in Count Two of the indictment; and

Fifth, the transaction occurred in the United States.

The term "monetary transaction" means the deposit, withdrawal, transfer, or exchange, in or affecting interstate commerce, of funds or a monetary instrument by, through, or to a financial institution.

The term "financial institution" includes a commercial bank.

The term "criminally derived property" means any property constituting, or derived from,

**DEFENDANT MONICO DOMINGUEZ'S
TRIAL BRIEF**                8-

the proceeds of a criminal offense. The government must prove that the defendant knew that the property involved in the monetary transaction constituted, or was derived from, proceeds obtained by some criminal offense. The government does not have to prove that the defendant knew the precise nature of that criminal offense, or knew the property involved in the transaction represented the proceeds of the robbery.  Although the government must prove that, of the property at issue more than $10,000 was criminally derived, the government does not have to prove that all of the property at issue was criminally derived.

### 5. Elements of Structuring (Count Seven)

*First*, the defendant had knowledge of the currency transaction reporting requirements; and

*Second*, he willfully structured or attempted to structure currency transactions;

*Third*, the purpose of the structured or attempted transaction was to evade the currency transaction reporting requirements;

*Fourth*, the defendant knew that structuring was unlawful; and

*Fifth*, the structured transactions involved one or more domestic financial institutions.

### 6. Elements of Obstruction of Justice (Count Eleven)

*First*, the defendant corruptly obstructed, influenced, or impeded an official proceeding, or attempted to do so; and

*Second*, the proceeding had some nexus to a federal interest.

"Corruptly" means that the act must be done with the purpose of obstructing justice.

////

**D. Points of Law on Any Other Issues Relevant to the Trial, Including all Foreseeable Procedural and Evidentiary Issues.**

Jury Instructions on the substantive elements of the law are straightforward. At this time, Defendant has addressed evidentiary issues that he anticipates will arise in his Motions in Limine already filed the Court.

DATED: January 13, 2014　　　　　　　　　　　　　　　Respectfully submitted,


　　　　　　　　　　　　　　　　　　　　　　　__/s/ Jai M. Gohel_____
　　　　　　　　　　　　　　　　　　　　　　　JAI M. GOHEL
　　　　　　　　　　　　　　　　　　　　　　　Attorney for Defendant
　　　　　　　　　　　　　　　　　　　　　　　MONICO DOMINGUEZ